Bobby H. HELMS, Petitioner-Appellant,

v.

Elie JONES, Warden,
Respondent-Appellee.

No. 79–2596.

United States Court of Appeals,
Fifth Circuit.

July 11, 1980.

---

**212**

James C. Bonner, Jr., Athens, Ga., for petitioner-appellant.

Nicholas G. Dumich, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before INGRAHAM, RONEY and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

The appellant, unable to meet his child support obligations, left the State of Georgia in search of vocational training opportunities.[1] He was subsequently convicted of child abandonment under Ga.Code Ann. § 74–9902 [1979 Supp.] and sentenced to three years' imprisonment. After exhausting state remedies he filed a petition for habeas corpus under 28 U.S.C. § 2254,[2] which was denied. On appeal he attacks the constitutionality of the statute. We think the petition should have been granted and reverse.

In essence, the statute[3] makes the crime of child abandonment a misdemeanor if the offense occurs in Georgia, while making the same crime a felony if the abandoning parent leaves the State of Georgia or abandons the child after leaving the State. The statute thus creates two classes of crimes, the first a misdemeanor for child abandonment within the State, the second a felony for leaving the State after abandonment or abandonment after leaving the State. Those outside Georgia, merely by their presence outside the State, are exposed to risk of a felony conviction while Georgia residents are exposed only to risk of a misdemeanor conviction for the same actions. We find the fundamental right to travel[4] is infringed by this classification system.

Employing "traditional" equal protection analysis, we are required to scrutinize strictly statutes which impermissibly interfere with the exercise of fundamental rights. Strict scrutiny requires a state to have a compelling interest which outweighs the infringement.[5]

Georgia argues that the compelling state interests here are (1) the greater ease in extraditing persons accused of felonies than those accused of misdemeanors and (2) the protection of the State's fiscal integrity by the resulting enforcement of required parental child support. These arguments are unpersuasive since Georgia has in place, through its adoption of the Uniform Reciprocal Enforcement of Support Act (URESA), Ga.Code Ann. § 99–9A, et seq.,[6] an alternative means of enforcing child support obligations. Fiscal integrity of the State, support of minor children, and extra-

---

1. Stipulation of Facts, Record at 7.

2. The appellant's discharge from custody during the pendency of this appeal does not moot his claim. *Carafas v. LaValle*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

3. Ga.Code Ann. § 74–9902 [1979 Supp.] provides:

    If any father or mother shall wilfully and voluntarily abandon his or her child . . . leaving it in a dependent condition, he or she shall be guilty of a misdemeanor. Provided, however, if any father or mother shall wilfully and voluntarily abandon his or her child . . . leaving it in a dependent condition and shall leave this State, or if any father or mother shall wilfully and voluntarily abandon his or her child . . . leaving it in a

    dependent condition, after leaving this State, he or she . . . shall be guilty of a felony . . . .

4. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); and *U. S. v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).

5. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1972).

6. *See specifically* § 99–906a providing for interstate extradition.

dition of the nonpaying parent are all protected by this Act.[7]

We therefore find no sufficiently compelling state interest here which permits distinguishing between nonsupporting parents within or without the State of Georgia. There is no question that the statute violates equal protection. Further, even where a governmental purpose is legitimate, as here, the "purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved."[8] Again, URESA provides a less drastic means of achieving the ends sought by this overly broad statute.

The failure of the statute to require criminal intent as an element necessary for conviction is further indication of its overbreadth. Under the provision a person leaving the State fully intending to support his or her children, but unable to do so,

commits a felony. A series of noncriminal acts can thus become a crime under the statute, subjecting the nonresident to extradition and felony conviction.[9] The advisability of a specific intent in statutes prohibiting the fundamental right to travel is illustrated by comparison to the federal "flight to avoid prosecution or giving testimony" statute, 18 U.S.C. § 1073. In examining the requisite elements for a conviction of that offense, where the statute itself requires intent, we have observed that "the gravamen of the offense charged . . . is that the defendant fled a state with *intent* to avoid prosecution therein, and *mere absence from the state* of prosecution, though it renders one a fugitive from justice for interstate rendition [citation omitted] is not sufficient proof of a federal crime."[10] (Emphasis supplied)

Accordingly, we REVERSE and REMAND for the issuance of the writ.[11]

---

**7.** The State's compelling interest argument further loses force by the failure of the State actively to enforce this statute. At oral argument appellee's counsel stated that he knew of no other prosecutions, while appellant's counsel knew of only three. Thus, the State has made only broadly conclusory statements about the necessity for this statute as part of a concerted attempt to solve a major state problem.

**8.** *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231, 237 (1960).

**9.** While we recognize that certain regulatory offenses do not require scienter or a criminal state of mind and that the criteria for distinguishing between crimes that require a mental element and those that do not are elusive, we decline to find the "crime" of crossing state lines as the type of "public welfare" statute which dispenses with *mens rea* as an element of the offense. *See generally, Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), and authorities cited therein.

**10.** *Barrow v. Owen*, 89 F.2d 476, 478 (5th Cir. 1937).

 *See* Ark.Rev.Stat.Ann. § 41–2405 (1975) for an example of a nonsupport statute which provides for specific intent. It creates a misdemeanor for failure to provide support, except if "the person leaves or remains without the State of Arkansas *with purpose to avoid a legal duty* to provide support to another person . . . ." (emphasis supplied), then the offense is a felony. The official comments to this statute are instructive. They state:

Prior law apparently imposed felony liability merely upon a showing that the defendant left the state. The difficulty in apprehending a defendant is not a relevant grading criterion in the case of any other offense, and nonsupport should not be an exception. In addition, the Commission was concerned with the fact that in an increasingly mobile society people often leave the state for reasons completely unrelated to possible support obligations . . .

We, of course, do not rule here on the constitutionality of Arkansas' statute, but merely find its approach of assistance on this point.

 *See also, In Re King*, 3 Cal.3d 226, 90 Cal. Rptr. 15, 474 P.2d 983 (1970), where the California Supreme Court found a statute similar to Georgia's constitutionally defective.

**11.** In preparing this opinion we learned first through LEXIS and then from the Georgia Attorney General's office that the Georgia Supreme Court decided on February 26, 1980, that in its view the questioned Georgia statute is constitutional. *See Garren v. The State*, 245 Ga. 323, 264 S.E.2d 876 (1980). There the court was faced with one who had already been charged with abandonment before leaving the State. There is no discussion of intent and whether the State proved that the defendant left Georgia with intent to avoid prosecution and intent not to support his children. Thus, the facts in *Garren* may reflect that he was fleeing with intent to avoid prosecution and payment of child support. Absent intent, the statute permits conviction of an innocent per-

son contrary to the common law requirement of a culpable state of mind as an ingredient of a criminal offense. The history and reasons for this element being an essentiality of a criminal act are eloquently described by Justice Jackson in *Morissette, supra* note 9. The Georgia court's decision does not alter our opinion in this case. We cannot concur with the notion that *mere* presence in another state can make the same actions a felony that are a misdemeanor in Georgia—this is a denial of equal protection and an impermissible limitation on travel.