Daniel ADAIR, Plaintiff,

v.

The KOPPERS COMPANY, INC., Defendant.

Civ. A. No. C81–2482–Y.

United States District Court, N. D. Ohio, E. D.

May 28, 1982.

Thomas Mester, Daniel J. White, Komito, Nurenberg, Plevin, Jacobson, Heller & McCarthy Co., L.P.A., Cleveland, Ohio, for plaintiff.

Albert J. Rhoa, Rhoa, Follen, Rawlin & Johnson, and W. Andrew Hoffman, Cleveland, Ohio, for defendant.

R. Patrick Baughman, Thos P. Mulligan, Cleveland, Ohio, for Rep. Steel.

## MEMORANDUM AND ORDER

KRUPANSKY, Circuit Judge, Sitting by Designation.

This is a diversity personal-injury action initiated by plaintiff Daniel Adair (Adair) against defendant Koppers Company, Inc. (Koppers) for damages designed to recompense an injury allegedly sustained by Adair while operating the "A" coal handling conveyer (conveyer) during a course of employment as a temporary foreman at the Republic Steel Corporation, Warren Plant. Koppers is alleged to have designed, manufactured, assembled and/or sold the conveyor in such a manner so as to create liability under theories of negligence, strict liability in tort and breach of express and implied warranties.

Presently before the Court is Kopper's motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., which pertinently states:

> (c) Motion and Proceedings Thereon .... The Judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Sixth Circuit has enunciated the standard to be applied in the determination of a Rule 56 motion:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.

*Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425 (6th Cir. 1962), followed by: *Bd. of Educ. of the City School Dist. of the City of Cincinnati, et al. v. H.E.W.,* 532 F.2d 1070, 1071 (6th Cir. 1976); *U. S. v. Articles of Device Consisting of Three Devices . . . "Diapulse", et al.,* 527 F.2d 1008, 1011 (6th Cir. 1976); *E.E.O.C. v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1093 (6th Cir. 1974); *Bosely, et al. v. City of Euclid, et al.,* 496 F.2d 193 (6th Cir. 1974); *Avery Products Corp. v. Morgan Adhesives Co.,* 496 F.2d 254, 257 (6th Cir. 1974). *See also U. S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Kopper's motion for summary judgment advances that the instant cause of action is barred by the statute of limitations established in O.R.C. § 2305.131 which states in full:

> § 2305.131. *Limitation of actions against architects and engineers, non-application of statute.*
>
> No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or furnishing or such services and construction.

This limitation does not apply to actions against any person in actual possession and control as owner, tenant, or otherwise of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damages for which the action is brought.

The record discloses that Koppers, pursuant to a contract executed with Trumbull-Cliffs Furnace Company in 1923, constructed an industrial complex styled a By-Product Coke Plant wherein the instant conveyor was installed as an integral operating unit.[1] The authenticity of such contract is conceded by plaintiff. (*See* Defendant's Brief, Exhibits A and B). Trumbull-Cliffs Furnace Company was subsequently purchased by Adair's employer, Republic Steel Corporation. Koppers performed additional services to the conveyor in 1949 whereby the operating capacity of the unit was increased. (*See* Defendant's Brief, Exhibits C and D). Koppers has exerted no dominion or control over the instant conveyor since 1949, well in excess of the 10 year limitations period of § 2305.131.

The contract refers to Koppers as "Contractor" and to Trumbull-Cliffs Furnace Company as "Purchaser". For the consideration of $2,670,000, Koppers agreed to provide labor, plant and material necessary to construct an industrial complex in accordance with blueprints, plans, drawings and specifications which were attached to the contract and incorporated therein by reference. Numerous drawings, blueprints, photographs and specifications relative to the instant conveyor and the complex as a whole are before the Court and their authenticity is also conceded by the parties. (*See* Exhibits attached to Defendant's Motion and Plaintiff's Brief in Opposition.) A system of several conveyors, of which the instant conveyor "A" is one, was designed and constructed by Koppers to transport coal from the rail system to the By-Product

Coke Ovens. (*See* Defendant's Brief, Exhibit D; reprinted in larger form in Defendant's Answers to Interrogatories, filed February 23, 1982, Blueprint # 36040).

Koppers admits to having designed the conveyor "A". (*See* Admissions, filed February 19, 1982, and Defendant's Answers To Interrogatories, filed February 23, 1982, No. 24). There is no issue of record indicating that Koppers acted in any capacity other than as a Contractor, designer and engineer in accordance with the construction contract. The following answers to interrogatories are pertinent to Koppers' role in the manufacture, design, sale and installation of the conveyor:

14. State what role this defendant played in the design, manufacture, assembly, destruction, sale or installation of the subject conveyor.

ANSWER: Defendant prepared the drawings attached to this document and entered into the contract attached to this document. Defendant, after the lapse of 58 years, has no record or knowledge of what role, if any, defendant played in the manufacture, assembly, distribution, sale or installation of the subject conveyor other than as set forth in the attached drawings and contract.

16. Was this defendant the immediate supplier of the subject conveyor to Republic Steel Corporation?

ANSWER: Yes.

19. Did this defendant, or any of its employees of representatives, install the subject conveyor or any component parts thereof at Republic Steel Corporation?

ANSWER: It is probable that defendant installed the conveyor but defendant does not really know.

21. Was this defendant the manufacturer or assembler of the conveyor?

---

1. Plaintiff Adair has submitted an affidavit of Donald J. Smith, a registered architect in the State of Ohio, wherein affiant concludes that the "conveyor 'A' is used for the transportation of coal to various other pieces of processing equipment. Moreover, it is an integral part of the related processing equipment which is used in a manufacturing process ..." (*See* Plaintiff's Brief in Opposition, filed May 10, 1982, Exhibit A.)

ANSWER: It is extremely doubtful that defendant manufactured the conveyor here involved.

(Note: Koppers response to requests for admissions, filed February 19, 1982 provides the following:

1. The subject conveyor was manufactured by defendant, The Koppers Company, Inc. (ANSWER: DENY.)

24. State whether this defendant designed the subject conveyor.

ANSWER: Yes.

25. If the answer to the preceding Interrogatory is in the affirmative, state the name and address of each person employed by you who participated in or has knowledge of the design of the subject winder.

ANSWER: Everyone who participated is long dead. No present Koppers employee has any knowledge not obvious from the drawings and contract attached to this document.

33. If this defendant manufactured the subject conveyor, please state when it was manufactured.

ANSWER: See Answer 20. (Answer 20 provides: "After the lapse of 58 years, defendant lacks the records and knowledge to answer this question")

34. Does this defendant possess or control any production records pertaining to the manufacture of the subject conveyor?

ANSWER: No.

Accordingly, all evidence of record, construed in a light most favorable to Adair, confirms that Koppers did design, "manufacture", install and sell the conveyor to Trumbull-Cliffs Furnace Company in accordance with the contract executed in 1923, and the specifications and blueprints incorporated therein.

The specifications incorporated into the contract regulate a myriad of features of the industrial complex including, as an illustrative example, the following: acid ejector, agitator engine, air compressors, ammonia liquor feed tank, ascension pipes, bagging scale with hopper, benzol washers, bleeders, by-product building, charging pumps, coal spillage elevator, etc. (See generally, scores of categories of "Specifications" attached to Koppers' Answers to Interrogatories, filed February 23, 1982). The following specification is provided for Conveyor A:

*3–f CONVEYOR "A"*

One (1) 36″ belt conveyor will be provided approximately 50′–0 centers. Conveyor will be driven at the head and by an A.C. motor and unit spur gear drive connected to conveyor head shaft by flexible coupling. A solenoid break will be provided for the motor. The motor will be mounted on a separate cast iron base and connected to first countershaft by a flexible coupling. Unit drive will be in a cast iron oil tight housing. Drive countershafts will run in amply proportioned bearings which will be greatly lubricated except for high speed countershaft which will have ring oiling bearings. Gears will be cut steel and pinions will be cut forged steel. All gears will run in oil.

((See "Specifications," page 46, attached to Koppers' Answer to Interrogatories filed February 2, 1982). Of the several conveyors incorporated into the complex for the purpose of transporting material substances, each was uniquely planned, designed, engineered and constructed as necessary to effectuate a transportation system. Conveyor "B" consisted of a 400′ center with a 36″ belt. Conveyor "C" consisted of a 20′ center with a 36″ belt. Mixer Conveyors # M–1, M–2 and M–3 each had 36″ belts and two were approximately 10′–7″ centered and the third approximately 25′ centered. Conveyor "D" contained a 30″ belt with 240′ centers. Conveyor "E" contained a 30″ belt with approximately 175′ centers. Numerous other engineering and design distinctions exist. For example, a breaker and mixer building of steel construction was provided to house the head end of conveyors "B" and "C" and the tail end of conveyor "D". (See generally "Specification", pages 46–48, attached to Koppers' Answers to Interrogatories, filed February 23, 1982.) The foregoing clearly evidences that the instant conveyor was a spe-

cifically incorporated integral component part of an industrial complex designed and constructed by Koppers. This conclusion is supported by the affidavits of architects Donald Smith (Smith) and Joseph Becker (Becker), discussed in greater detail hereinafter.

In addressing the issue of the statute of limitations as pronounced in O.R.C. § 2305.-131 and its effect upon the plaintiff's cause of action, the Court, applying the substantive law of Ohio in this diversity action, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and in particular applying Ohio's limitations of actions, *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), must determine if the instant conveyor is an "improvement to real property" within the meaning of the statute. Research of the parties and the Court has failed to disclose any legislative history or judicial interpretations of this legislative enactment.[2] However, similar statutes which have been enacted in approximately 30 states have received extensive judicial examination and provide guidance. It is generally recognized that the purpose of such statutes is to

> limit the time within which actions for deficiencies in the design, construction, and supervision of construction of improvements to property, for which architects, engineers, and others in the construction industry [are] responsible, could be brought against such person.

*Annot.*, 93 A.L.R.3d 1242, 1246 ("Validity and construction, as to claim alleging design defects, of statute imposing time limitations upon action against architect or engineer for injury or death arising out of defective or unsafe condition of improvement to real property"). One commentator has theorized that such limitations statutes may be intended to mitigate the potential unfairness to construction professionals subject to an expanded duration of liability as a result of the judicial erosion of the privity defense. *See Limitation of Action Statutes for Architects and Builders—Blueprints for*

*Non-Action*, 18 *Cath.U.L.Rev.* 361 (1969); *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662, 664–66 (1972). Such erosion has manifested within Ohio products liability law. In *Lonzrick v. Republic Steel Corp.*, 6 Ohio St.2d 227, 218 N.E.2d 185 (1966) the Ohio Supreme Court established an action in tort for breach of an *implied* warranty without regard to contractual notions of privity, and further found that reliance on representations was not an essential element to recovery. More pertinently the Ohio Supreme Court decision of · *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977) adopted the doctrine of strict liability in tort by approving § 402A of the Restatement of Torts 2d. which contains no privity of contract requirement. *See also: Leichtamer v. American Motors Corp.*, 67 Ohio St.2d 456, 424 N.E.2d 568 (1981); *Seley v. G. D. Searle & Co.*, 67 Ohio St.2d 192, 423 N.E.2d 831 (1981). Assuming that the foregoing represents a fair summary of the purposes and goal underlying § 2305.131, it is evident that such result would be effectuated through application of the instant statute to the action *sub judice*.

The industrial complex, and the conveyor as an integral part thereof, clearly constitutes an "improvement to real property" by even the most stringent standards. It is well recognized that limitations statutes such as § 2305.131 are applicable to actions involving injuries from defects in building structures. *See, e.g.: Oole v. Oosting*, 82 Mich.App. 291, 266 N.E.2d 795 (1978) (wooden deck attached to residence); *Reeves v. Ille Electric Co.*, 170 Mont. 104, 551 P.2d 647 (1976) (whirlpool bath in college field house); *O'Conner v. Altus*, 123 N.J.Super. 379, 303 A.2d 329, *aff'd*, 67 N.J. 106, 335 A.2d 545 (1973) (glass sidelight in building); *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214, *cert. denied*, 91 N.M. 3, 569 P.2d 413 (1977) (glass door or window on observation deck of terminal building). It is equally well recognized that the phrase "improvement to

---

**2.** The only Ohio action cited by either party provides *de minimus* precedential value. *See Board of Trustees of the Public Library of Cin-* *cinnati and Hamilton County Ohio v. Strauss*, Hamilton County Court of Appeals No. C–77383 (Nov. 15, 1978).

real property", or its statutory counterpart, encompasses structures other than buildings. *See, e.g.: Brown v. Jersey Cent. Power & Light Co.,* 163 N.J.Super. 179, 394 A.2d 397 (1978) (transfer switch assembly cabinet in power plant an "improvement"); *Mora-San Miguel Electric Coop., Inc. v. Hicks & Rayland Consulting & Engineering Co.,* 93 N.M. 175, 598 P.2d 218 (1979) (electric power line an "improvement"); *Kozikowski v. Delaware River Port Authority,* 397 F.Supp. 1115 (D.C.N.J.1975) (bridge an "improvement"); *Nevada Lakeshore Co., Inc. v. Diamond Electric, Inc.,* 511 P.2d 113 (Nev.S.C.1973) (swimming pool); *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 260 N.W.2d 548 (Minn.1977) (furnace installed in a store an "improvement to real property"); *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972) (defective street pavement found to be an improvement to realty); *Yakima Fruit and Cold Storage Co. v. Central Heating and Plumbing Co.,* 81 Wash.2d 528, 503 P.2d 108 (1972) (refrigeration system in cold storage warehouse was an "improvement"); *Kallas Millwork Corp. v. Square D Co.,* 66 Wis.2d 382, 225 N.W.2d 454 (1975) (fire sprinkler system an improvement to real property); *McClanahan v. American Gilsonite Company,* 494 F.Supp. 1334 (D.Colo.1980) (surge tank in oil refinery an "improvement"). The state forums have not adopted uniform legal standards or factors to identify an "improvement". In *Cudahy Co. v. Ragnar Benson, Inc.,* 514 F.Supp. 1212 (D.Colo.1981) the Court, construing an analogous Colorado limitations statute, and determining that a personal injury action was barred by such statute, stated:

Having viewed the plant and refrigeration system, as well as copies of the construction plans, the Court finds without hesitation that the system is an improvement to real property within the meaning of § 13–80–127. Although case law regarding fixtures may be relevant by analogy for purposes of interpreting this statutory provision, the Court need not decide whether the system is a fixture. Rather, the issue is whether the system is an "improvement to real property" in the ordinary sense of the term. *Kallas Millwork Corp. v. Square D Co.,* 66 Wis.2d 382, 225 N.W.2d 454, 456 (1975). The fact that the header cap which failed is only a few inches wide and is an interchangeable part is not decisive, nor is the weight of the allegedly defective valve. The design and construction of the refrigeration system govern the Court's conclusion. The header cap is welded to the pipe system and both are integral components of the refrigeration system which is itself an essential part of the overall structure of the plant. Without the system, the plant could not serve the purpose for which it was designed. *See Yakima Fruit and Cold Storage Co. v. Central Heating and Plumbing Co.,* 81 Wash.2d 528, 503 P.2d 108 (1972).

As in *Cudahy,* the subject of the instant action is an integral component of an industrial system which is essential for the plant to serve the purpose for which it was designed: transportation of coal is essential to the operation of the By-Product Coke Plant. Both the complex and the conveyor are clearly "improvements" within the meaning of the legislative intent.

While no Ohio law exists defining "improvement", it is noted that distinctions between personalty and realty have manifested themselves in several areas of law including tax assessment, vendor-vendee, foreclosure and appropriations proceedings. The principles of differentiation are somewhat probative of identifying an improvement even though the public policies underlying these legal areas are distinguishable. Defining a "fixture" within the context of an appropriation proceeding, the Ohio Supreme Court has advanced the following stringent factors for consideration: (1) the nature of the property, (2) the manner in which it is annexed to the realty, (3) the purpose for which annexation is made, (4) the intention of the annexing party to make the property a part of the realty and dedicate it irrevocably to the realty for a particular use, (5) the degree of difficulty and the extent of any economic loss involved in thereafter removing it from the realty, and

(6) the damages to the severed property which removal would cause. *Masheter v. Boehm,* 37 Ohio St.2d 68, 77, 307 N.E.2d 533, 540 (1974). Given the identity, nature, purpose and physical characteristics of the instant conveyor, the same appears to be a "fixture" within the meaning of *Masheter.* As forenoted, however, "fixture" law is not precedential but only probative. The Court concludes without hesitation that the conveyor is an "improvement to real property." [3]

Adair offers the affidavit of Donald Smith (Smith), a registered architect, wherein affiant concludes that "Conveyor 'A' is not a part of real property and is not an improvement to real property." (*See* Plaintiff's Brief in Opposition, Exhibit A, filed May 10, 1982). Such "evidence" fails to generate a genuine issue of material fact relating to whether the conveyor is an "improvement" since such determination is an issue of law reserved for the Court. *See Kallas Millwork Corp. v. Square D. Co.,* 66 Wis.2d 382, 225 N.W.2d 454 (1975). Indeed, Smith concedes that the conveyor is "an integral part of the related processing equipment which is used in a manufacturing process" and it "is used for the transportation of coal to various other pieces of processing equipment". These conclusions actually support Koppers' affidavit executed by Becker, an engineer with an architectural degree. (*See* Defendant's Motion, Exhibit A, filed March 16, 1982). Becker opines

> That the coal conveyor system, including Conveyor "A", was a *permanent installation* and is a system consisting of numerous conveyor belts used to transport the coal for the plant from the railroad cars in a continuing process to a series of buildings, crushers, mixers and bins and ultimately to the coke ovens.

Both affidavits confirm the conclusion that the conveyor is an "improvement".

No genuine issue exists or has been raised relative to the following material facts: (1) the existence and terms of the construction contract executed between Koppers and Trumbull-Cliffs Furnace Company; (2) the specifications, blueprints and drawings incorporated into such contract; (3) that the complex was, for purposes of this litigation, constructed by Koppers in accordance with the terms of the contract; (4) the date of construction of the industrial complex (1924); (5) the date of additional services performed on the conveyor by Koppers (1949); (6) the date of Adair's injury (1980); and (7) the date upon which this action was filed (1981). From the foregoing documentary evidence this Court can conclude as a matter of law that the instant conveyor is an "improvement to real property" within the meaning of § 2305.131 and that Koppers performed services for or furnished the design, plan, supervision of construction or construction of the "improvement". Koppers is clearly within the protective ambit of § 2305.131 and is entitled to judgment as a matter of law.

The Court is acutely cognizant of the inherent tension between the instant limitations statute and products liability law as it currently exists in Ohio. Classifying a unit as an "improvement to real property" rather than as a "product" or "equipment", and categorizing the party upon whom liability is sought as one who "perform[ed] services for or furnish[ed] the design, planning, supervision of construction, or construction of such improvement" rather than as a "manufacturer", can be dispositive of the legal rights and liabilities which attend the litigation. Indeed, Adair avers that the instant motion for summary judgment should be denied since "§ 2305.131 has no application to the instant product liability action sounding in at least strict liability". (*See* Plaintiff's Brief in Opposition at 10). The Complaint alleges that Koppers designed, manufactured, assembled and/or sold the conveyor in such a manner so as to create liability under theories of negligence, strict liability in tort and breach of express and implied warranties. However, while Adair has

---

**3.** Although the conveyor is currently assessed as personalty rather than realty for tax purposes, *see* Affidavit of W. L. Holeski, Exhibit B, Plaintiff's Brief in Opposition filed May 10, 1982, such fact fails to persuade this Court that the conveyor is not an "improvement."

proffered documentary evidence in support of the proposition that the conveyor is not an "improvement", which this Court finds unpersuasive, no documentary evidence has been proffered in support of the proposition that the conveyor is a "product" within the meaning of products liability law or that Koppers is a "manufacturer" of conveyors within the meaning of that body of law.[4] In light of the instant motion, such a failure to proffer evidence in support of the proposition that the instant action is indeed a products liability action, rather than a defective design and/or construction action governed by § 2305.131, is tantamount to resting on the allegations of the complaint. Rule 56(e), Fed.R.Civ.P., permits this Court to pierce the allegations of the complaint on a motion for summary judgment. As the Sixth Circuit has aptly noted:

> The thrust of Rule 56(e) is that a party may not simply rest on the allegations in his pleadings in opposing a motion for summary judgment. *Adickes v. Kress & Co., supra,* 389 U.S. [144] at 157 n.19, 90 S.Ct. 1598 [at 1608]. Plaintiffs are not entitled "to get to the jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial..." *First National Bank v. Cities Services,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

*Smith v. Hudson,* 600 F.2d 60, 65–66 (6th Cir. 1979). The history of Sixth Circuit opinions is replete with application of these principles. *See: Bryant v. Commonwealth of Kentucky,* 490 F.2d 1273 (6th Cir. 1974) (per curiam); *Daily Press, Inc. v. United Press, Int'l,* 412 F.2d 126, 134 (6th Cir.), *cert. denied,* 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1979); *James R. Snyder Co. v. Edward Rose & Sons,* 546 F.2d 206, 209–10 (6th Cir. 1976); *Ruzicka v. General Motors Corp.,* 523 F.2d 306, 316 (6th Cir. 1975); *Sayre v. City of Cleveland,* 493 F.2d 64, 70 (6th Cir.), *cert. denied,* 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 64 (1974); *Larimer v. United Inter-Mountain Telephone Co.,* 428 F.Supp. 8, 9, 10 n.1 (E.D.Tenn.1976); *Herm v. Stafford,* 466 F.Supp. 439, 440 (W.D.Ken.1979). *Pinzer v. Wood,* 82 F.R.D. 607 (E.D.Tenn. 1979), enunciates the application of Rule 56 within the jurisdiction of the Sixth Circuit:

> Summary Judgment procedure " * * * is clearly intended to be used to pierce the allegations of the pleadings and allow the trial court to dispose of the case in advance of the hearing on the merits when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue of fact, * * * " *Bryant v. Commonwealth of Kentucky,* C.A. 6th (1974), 490 F.2d

4. As aforenoted, plaintiff avers that the instant statute has no application to the cause of action founded upon strict liability. § 402A of the Restatement of Torts 2d has been adopted by Ohio. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 364 N.E.2d 267 (1977). Said section states in pertinent part:

Special Liability of Seller of Product for Physical Harm to User or Consumer:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, *if*

(a) The seller is *engaged in the business of selling such a product* ...

Not only does § 402A facially indicate that said provision is not applicable to the occasional seller or one not engaged in the business of selling such a product, but comment f further imports that strict tort liability is not an appropriate theory of liability for application to the occasional seller. The Ohio Supreme Court, in

approving § 402A, specifically recognized the utility of the Restatement's illustrative comments. *Temple, supra,* 364 N.E.2d at 271. *See also: Balido v. Improved Machinery, Inc.,* 105 Cal.Rptr. 890, 29 Cal.App.3d 633, 639 (1972); *McKenna v. Art Pearl Works, Inc.,* 255 Pa.Super. 362, 310 A.2d 677 (1973); *Annot.,* 99 A.L.R.3d 651 (1980).

Adair has supplied no documentary evidence in support of the proposition that Koppers has sold conveyors other than those involved in this litigation. Rather, all evidence indicates that Koppers contracted to design, construct, and engineer a coke processing plant and that Koppers' involvement was directed toward and intimately bound up with the effectuation of that goal. There is nothing to indicate that Koppers designed, manufactured or sold conveyors other than as integral component parts of this industrial complex. Further, there is no evidence or allegation to support the proposition that Koppers was engaged in the business of "selling" industrial plants.

1273, 1274–1275[4, 5]. Its purpose is not to cut litigants off from their right of trial by jury if they really have genuine factual issues to try. *Poller v. Columbian Broadcasting System,* (1962), 368 U.S. 464, 468, 82 S.Ct. 486, 7 L.Ed.2d 458, 461[2]. Thus, while the Court was required to, and did, construe *the evidence* against the plaintiff and in its most favorable light to the defendants and resolved all doubt against the moving party, *Board of Ed., Cincinnati v. Department of H. E. W.,* C.A. 6th (1976), 532 F.2d 1070, 1071[1, 2], there was no requirement that it construe the bare allegations of the defendants' pleadings as true. The whole purpose of summary judgment procedure would be defeated " * * * if a case could be forced to trial by a mere assertion that a genuine issue exists, without any showing of evidence. * * * " *Short v. Louisville And Nashville Railroad Company,* D.C.Tenn., (1962), 213 F.Supp. 549, 550[2].

*Id.* at 612. The Sixth Circuit is in conformity with other jurisdictions in application of Rule 56(e). *See: Security National Bank v. Belleville Livestock Commission Co., Inc.,* 619 F.2d 840 (10th Cir. 1980); *American International Insurance Co. v. Vessel SS Fortaleza,* 585 F.2d 22 (1st Cir. 1978); *Heck v. Rodgers,* 457 F.2d 303 (7th Cir. 1972).

In sum, the Court concludes that § 2305.131 is fully applicable to and provides a legal defense to the action *sub judice.*

■ Adair has challenged the constitutionality of the limitations statute as violative of the Ohio Constitution, Article 1, § 16 and the due process and equal protection clauses of the United States Constitution. The state forums are divided on the constitutionality of limitations actions such as O.R.C. § 2305.131. *See: Annot., supra,* collected cases therein; *McClanahan v. American Gilsonite Company,* 494 F.Supp. 1334, 1344–45 (D.Colo.1980) (collected

cases). This Court does not find the limitations statute constitutionally infirm.

■ Adair first challenges the statute as violative of the Ohio Constitution, Article 1, § 16 [5] and the due process clause of the Fourteenth Amendment to the United States Constitution since said statute bars a cause of action before it accrues. The "due course of law" provision of Article 1, § 16 has been determined to be the equivalent of the due process clause of the Fourteenth Amendment to the United States Constitution and shall be treated as such herein. *State ex rel. Heller v. Miller,* 61 Ohio St.2d 6, 399 N.E.2d 66 (1980); *In re Appropriations of Easement,* 104 Ohio App. 243, 148 N.E.2d 242 (1957). This Court concludes that § 2305.131 does not violate due process by unreasonably restricting the right to sue. The Ohio Legislature possesses the authority to change the rules of the common law or abrogate a common law right of action before it vests. *Fassig v. State ex rel. Turner,* 95 Ohio St. 232, 248, 116 N.E. 104 (1917). The due process clause does not forbid the "creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Silver v. Silver,* 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929). Since there is no fundamental right to have access to courts to secure remedies for injuries, and since the instant claim involves a common law right rather than one entitled to special constitutional protection, access to the courts may be proscribed if there is a rational basis for so doing. *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1978).

The instant statute, whether viewed as a statute of limitations or as an abrogation of common law rights before they accrue, is rationally related to the legislative goal of precluding litigation of claims wherein proofs have grown stale. *Accord: Rosen-*

---

**5.** Article 1, § 16 states in full:

All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay;

Suits may be brought against the state, in such courts and in such manner, as may be provided by law.

berg v. Town of North Bergen, 61 N.J. 190, 293 A.2d 662 (1972); Freezer Storage, Inc. v. Armstrong Cork Co., 234 Pa.Super. 441, 341 A.2d 184 (1975); Oole v. Oosting, 82 Mich.App. 291, 266 N.W.2d 795 (1978).

 Adair further challenges the statute as violative of the equal protection clause of the Fourteenth Amendment, stating:

> Comparable statutes to Ohio Revised Code Section 2305.131 have also been declared unconstitutional as a violation of equal protection of the law because the statute places construction people, such as engineers and contractors, in one class, and owners in another without any rational basis therefor. (cites omitted) Similarly, there is no rational basis for placing a manufacturer, supplier, or seller of a product which is utilized in a building separate from a manufacturer, supplier, or seller of a product which is sold and used on its own and not in conjunction with a building, in light of the purpose behind Ohio Revised Code Section 2305.-131 ...

(See Plaintiff's Brief in Opposition at 15). Since the equal protection challenge proffered by Adair seeks to assert the rights of *other* potential defendants in real property improvement actions, rather than plaintiff's own constitutional rights, and maintains that such other potential defendants have been irrationally excluded from the *protection* of § 2305.131, this Court *sua sponte* addresses the issue of whether Adair has satisfied Article III's jurisdictional requirements, to wit, whether plaintiff has standing to assert this equal protection challenge. While Adair has satisfied the "injury in fact" requirement of Article III, he is clearly not a proper proponent of the particular legal rights upon which the instant challenge is founded. A litigant generally has no standing to assert the constitutional claims of third persons. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* —— U.S. ——, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1982); *Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826

(1976); *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978). As the Supreme Court has stated in support of this general rule:

> First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not ... Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them.

*Singleton, supra,* 428 U.S. at 113–14, 96 S.Ct. at 2874. Some departures from the general rule have been recognized. In *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) the seller of land who breached a racially restrictive covenant was found to have standing to assert the rights of black purchasers in defense to a damage action brought by white covenantees. In *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), a physician charged with violation of a statute prohibiting destruction of information regarding contraception possessed standing to assert the rights of patients in order to avoid conviction. In *N. A. A. C. P. v. Alabama,* 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1958), the NAACP had standing to assert that the compulsory disclosure of membership lists violates associational rights of its members since the individual member would have had to waive the right to anonymous membership in order to assert it. *See also: Trafficante v. Metropolitan Life Insurance Company,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (white tenant in a public housing project had standing as an "aggrieved person" to attack the discriminatory exclusion of black ten-

ants); *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The Court opines that the policies and philosophies underlying these limited departures from the general rule that a litigant may not assert the constitutional rights of third persons are inapplicable to the instant litigation and that Adair has no standing to present the instant equal protection challenge. *Accord: Bouser v. Lincoln Park*, 83 Mich.App. 167, 268 N.W.2d 332 (1978). *Contra: McClanahan v. American Gilsonite Company*, 494 F.Supp. 1334 (D.Colo.1980).

Even if Adair had standing to challenge § 2305.131 as violative of the equal protection clause of the Fourteenth Amendment, it is readily apparent that such a challenge must fail. The oft-cited Supreme Court decision of *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) has firmly established that

> equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class.

96 S.Ct. at 2566 (footnotes omitted), citing *San Antonio School District v. Rodriguez*, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973). *Accord: Casbah, Inc. v. Thone*, 651 F.2d 551 557 (8th Cir. 1981); *Martin v. Bergland*, 639 F.2d 647, 649 (10th Cir. 1981); *Tsosie v. Califano*, 630 F.2d 1328 (9th Cir. 1980); *Carmi v. Metropolitan St. Louis Sewer District*, 620 F.2d 672, 676 (8th Cir. 1980); *Helms v. Jones*, 621 F.2d 211 (5th Cir. 1980); *Gabree v. King*, 614 F.2d 1, 2 (1st Cir. 1980). Further, a "suspect class" is one

> saddled with such disabilities, or subjected to such a history of purposeful unequal treatment or relegated to such a position of political powerlessness as to command extra-ordinary protection from the majoritarian political process.

*Massachusetts Board of Retirement, supra*, 96 S.Ct. at 2567. Typical suspect classes include alienage, race and ancestry. *See*, respectively, *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *Oyama v. California*, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948). Since the constitutional rights attempted to be asserted by Adair are not fundamental and do not involve members of a suspect class, the appropriate judicial analysis is the "rational-basis standard" whereby the pertinent classification must be sustained unless such is arbitrary and bears no rational relationship to a legitimate governmental interest. *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *U. S. Department of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Washington v. Confederated Bands and Tribes of Yakima Indian Nation*, 439 U.S. 463, 99 S.Ct. 740, 749, 58 L.Ed.2d 740 (1979), *reh. denied*, 440 U.S. 940, 99 S.Ct. 1290, 59 L.Ed.2d 500 (1979), *on remand*, 608 F.2d 750; *Schweiker v. Wilson*, 450 U.S. 1074, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981).

While this Court possesses no analytical guidance from pertinent legislative history of § 2305.131 to determine whether the instant statute has a rational and reasonable justification for the classifications therein, it is opined that vital distinctions exist between owners or suppliers and those engaged in the professions and occupations of design and building. As Koppers has noted, "The owner is in the position of being able to maintain the property long after the architects, builders and equipment design engineers have completed their work." (*See* Reply Brief of Defendant, filed May 17, 1982, and numerous citations therein).

In sum, this Court has construed the record in the light most favorable to Adair. No genuine issue of material facts exists, and Koppers is entitled to judgment as a matter of law pursuant to § 2305.131 which this Court finds constitutional as challenged. Accordingly, Koppers' motion for summary judgment must be and hereby is granted.

IT IS SO ORDERED.