**UNITED STATES of America, Appellant,**

v.

**John M. REILLY, Appellee.**

**No. 9476.**

United States Court of Appeals Tenth Circuit.

Nov. 9, 1967.

---

Jack H. Weiner, Washington, D. C. (J. William Doolittle, Acting Asst. Atty. Gen., John Quinn, U. S. Atty., and David L. Rose, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellant.

Joseph A. Sommer, Santa Fe, N. M. (Thomas F. McKenna, Sr., Santa Fe, N. M., was with him on the brief), for appellee.

Before LEWIS and HICKEY, Circuit Judges, and STANLEY, District Judge.

LEWIS, Circuit Judge.

This is a suit by the government for indemnity or in the alternative, contribu-

tion, for the cost of settling five tort actions brought against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The tort actions were instituted by representatives of five minor children seeking total damages of $2,210,500 for injuries and death caused by the accidental explosion of a 2.36-inch rocket launcher round or "bazooka shell." The amount paid in settlement was $350,000. The government looks to appellee John M. Reilly for indemnity on grounds that his negligence was the sole cause of the accident, or that his negligence was primary and active while the negligence of the United States was merely secondary and passive. The alternate remedy of contribution is sought on grounds that Reilly was a joint tort-feasor and that his liability to the injured parties, as well as the government's, was extinguished by the settlement. The United States District Court for the District of New Mexico dismissed the government's complaint and action for failure to state a claim upon which relief could be granted. This appeal is from that order of dismissal.

The relevant facts as pleaded may be summarized. On Saturday July 14, 1962, John M. Reilly and his ten-year-old nephew went picnicking on government-owned property outside Los Alamos, New Mexico. The property was at the time being used by the United States and the University of California under contract with the Atomic Energy Commission for the operation of the Los Alamos Scientific Laboratory. Reilly was an employee of the Los Alamos Scientific Laboratory. During an earlier period, from approximately July 1947 through December 1947, the property had been used by a United States Provisional Military Police Battalion as an impact area for shells fired from 2.36-inch rocket launchers or bazookas. While exploring the area, Reilly and his nephew found an old bazooka shell which they placed in

Reilly's automobile and transported to Reilly's home in the town of Los Alamos. The shell was removed from the automobile by the nephew and introduced into the play of several children. The shell was dropped, it exploded, and one child was killed. Four other children, including Reilly's nephew, were seriously injured.

In the complaints filed under the Federal Tort Claims Act by representatives of the five children it was alleged, among other things, that the United States had inadequately searched and cleared the area where the unexploded bazooka shell was found, that the United States had failed to erect and maintain appropriate warnings along its newly constructed public highway near the area, and that agencies or agents of the United States had in fact caused information to be published in a weekly newsletter to employees of Los Alamos Scientific Laboratory regarding the attractiveness of the area for hikes, picnics, and discovery of Indian artifacts. The contested issues of law and fact arising out of these allegations were never tried, for on October 23, 1964 the compromise settlement of $350,000 was accepted by the Attorney General of the United States and submitted to the trial court for approval pursuant to 28 U.S.C. § 2677.[1] As submitted and approved, the settlement provided for release from further liability of "the defendant, the United States of America, and its agents, contractors and employees." It also provided:

"That this agreement shall not constitute an admission of liability or fault on the part of the defendant, the United States of America, or on the part of its agents, namely, the Atomic Energy Commission, the United States Army and any and all agents and employees of any and all other Government departments, agencies, employees or contractors."

---

1. 28 U.S.C. § 2677 was amended July 18, 1966 by P.L. 89–506, 80 Stat. 306. As of January 18, 1967, court approval is no longer necessary for settlements between the United States and private parties seeking relief under the Federal Tort Claims Act. The amendments do not, however, affect the requirement of court approval for the compromise settlement involved here.

On October 29, 1964, a supplemental stipulation was filed purporting to "clarify and specify the intent of the parties with respect to the release" in the settlement. It provided for release of "the defendant, the United States of America, its agents and employees and its contractors and their agents and employees, John M. Reilly, and any and all other persons." The supplemental stipulation was neither seen nor approved by the trial court.

On April 12, 1965, the United States filed the instant suit against Reilly in the same district court that had approved the compromise settlement. In addition to the facts previously set forth, the complaint alleged that Reilly was negligent in removing the bazooka shell from government property, transporting it to his home in a residential area, and permitting children to play with it without adult supervision. The apparent conclusions of the trial court which premised the dismissal of the action were (1) that the United States was an active tortfeasor and therefore not entitled to indemnity, and (2) that neither the settlement itself nor the supplemental stipulation effected a valid release of John M. Reilly and therefore the United States was not entitled to contribution.[2] We affirm the district court's dismissal of the second count in the government's complaint for contribution and remand the case for trial on the single issue of indemnity.

■■■ Assuming the premise plea, that Reilly was at least a joint tortfeasor, the parties agree that under New Mexico law Reilly's liability for contribution depends solely upon whether his liability in tort to the injured children was extinguished by the settlement between the children's representatives and the United States.[3] The same district court that approved the settlement in the first instance apparently believed that Reilly's tort liability had not been so extinguished, and we think both the law and the facts amply support that interpretation. With the interests of minors at stake, the trial judge had a special obligation to see that they were properly represented, not only by their own representatives but also by the court itself. See Bonds v. Joplin's Heirs, 64 N.M. 342, 344, 328 P.2d 597, 598–599. Additional precautions of course had to be taken where the rights of those minors were made subject to a contract of settlement. And when problems of interpretation arise out of such contracts, we would be very hesitant to upset the legal interpretation placed by the trial judge as to the effect and meaning of his own order. Here the injured parties asked for total damages in excess of two million dollars. The government was able to negotiate a settlement for about one-sixth of that amount with a release which, as approved by the court, failed to mention specifically a very significant participant in the incident, John M. Reilly. It is quite reasonable to infer that under these circumstances court approval was granted with the understanding that the release ran only to the United States and its agents, contractors and employees; and not to Reilly. Such an understanding is certainly reflected by the summary dismissal of the government's complaint.

The government suggests that we impose an interpretation upon the first release which would bring the appellee

---

2. There were no formal findings of fact and conclusions of law. The district court's letter opinion stated merely that dismissal was based on the arguments set forth in portions of defendant Reilly's supporting brief.

3. New Mexico has adopted portions of the Uniform Contribution Among Tortfeasors Act which provides in pertinent part:

"A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

\* \* \* \* \*

"A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides." N.M.Stat.Ann. 24–1–12(3) & 24–1–14.

within the broad class of parties listed. Aside from the special consideration to be given the rights of minors and the concomitant deference we owe the supervising trial judge, we believe that the New Mexico courts would follow the weight of authority under the Uniform Contribution Among Tortfeasors Act which holds that a joint tortfeasor must be released *by name* in order for the settling joint tortfeasor to recover contribution, and this notwithstanding language in the settlement or order of approval purporting to satisfy "all claims" arising out of the incident. See Allbright Bros. Contractors, Inc., for Use and Benefit of National Sur. Corp. v. Hull-Dobbs Co., 6 Cir., 209 F.2d 103 (applying Arkansas Uniform Act), and authorities cited. In any event, the interpretation suggested would have possible merit only if Reilly had been acting within the scope or course of his employment with a government contractor. Here the connection between Reilly's employment and his alleged tortious conduct was a matter of pure happenstance.

 With respect to the supplemental stipulation which purported to release John M. Reilly by name, we do not question here the authority of the Attorney General to purchase the release of private persons from potential tort liability where such a purchase is deemed to be in the best interest of the United States. Consistent with the previous arguments, however, the supplemental stipulation here created a substantive addition to the contract of settlement, and we believe that absence of court approval as then required by 28 U.S.C. § 2677 [4] rendered that stipulation and the attendant release of Reilly a legal nullity. See Hubsch v. United States, 338 U.S. 440, 70 S.Ct. 225, 94 L.Ed. 244. We take it to be settled that where Congress has set out a statutory procedure for the compromise of matters involving the United States, it implicitly negatives the use of any other procedure. Botany Mills v. United States, 278 U.S. 282, 288–289, 49 S.Ct. 129, 73 L.Ed. 379. It follows that without judicial approval, as the Congress then required for settlement of tort claims a compromise with the government could not be finalized. This conclusion is especially dictated here where the applicable federal law complements state law and policy directed to the protection of minors.

We accordingly, conclude, as did the trial court, that Reilly's potential liability in tort to the injured children was not legally extinguished by the judicially approved settlement proceedings and that controlling New Mexico law dictated dismissal of the government's claim for contribution,

██ We turn then to the question of indemnity.[5] The New Mexico Supreme Court has recognized that where joint tortfeasors are not *in pari delicto,* or in equal fault, the secondary or passive wrongdoer "may escape the payment of damages assessed against him by putting the ultimate loss upon the one principally responsible for the injury done." Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900, 905, quoting Union Stock Yards Co. of Omaha v. Chicago B. & Q. R.R., 196 U.S. 217, 224, 25 S.Ct. 226, 49 LEd. 453. Thus, the secondary or passive wrongdoer who has paid damages to the injured parties has a common-law right of indemnity against the primary or active wrongdoer, see Lommori v. Milner Hotels, Inc., 63 N.M. 342, 350, 319 P.2d 949, 955; Krametbauer v. McDonald, supra and it is this right that the government attempts to invoke in the case at bar. On the basis of arguments presented in Reilly's brief support of the motion to dismiss, the district court apparently concluded as a matter of law that indemnity was not available because it was clear on the face of the complaint that the United States was an active and primary tortfeasor whose conduct was a

---

4. See note 1 supra.

5. The New Mexico Uniform Contribution Among Tortfeasors Act expressly preserves the common-law right of indem-

nity. N.M.Stat.Ann. 24–1–16. See Thomas v. Malco Refineries, Inc., 10 Cir., 214 F.2d 884.

concurrent and proximate cause of the injury to the children. We believe that without a resolution of the several substantial issues of fact such a conclusion cannot be sustained. See Allied Mutual Casualty Corp. v. General Motors Corp., 10 Cir., 279 F.2d 455.

 In considering a dismissal for failure to state a cause of action or claim upon which relief can be granted, all facts properly pleaded must be taken as true. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209; Parkinson v. California Co., 10 Cir., 233 F.2d 432. Thus, from the allegations in the government's complaint we must presume that John M. Reilly was negligent and that his negligence was a proximate cause of injury to the children. In contrast and contrary to the assertions of the appellee, all allegations of fact in the five original tort actions relating to the negligence of the United States stand disputed as expressly emphasized by the approved contract of settlement which was made a part of the government's pleadings. A case in this posture should have been submitted to a trier of fact for determination of basic factual issues of negligence on the part of the United States and issues of active or primary fault relative to the children. Compare majority and dissenting opinions in Schmidt v. United States, 10 Cir., 179 F.2d 724 (applying Kansas law).[6]

The district court's dismissal of the government's count for contribution is affirmed. The dismissal of the count for indemnity is reversed and the cause remanded for further proceedings in accord with the views herein expressed. No costs are awarded.

6. Although the authorities are numerous and somewhat conflicting, New Mexico courts apparently have not had occasion to consider the questions of law that might be presented here. In *Schmidt*, the facts were substantially like those in the case at bar. The majority of the court said:

"We think it must be said from the decisions, as well as from sound logic, that it is not within the range of reasonable expectation of the Government and its agents to anticipate that

Schmidt, whose right on the premises was limited to cutting hay, would become a trespasser and take and remove property [old bazooka shells] to which he had no right." 179 F.2d at 727. The court then held that the government owed no actionable duty to Schmidt's eight children who were killed or injured by an explosion of bazooka shells ninety miles away from the military reservation where they had been found. But see United States v. Marshall, 9 Cir., 230 F.2d 183, 192 n. 8.