832 P.2d 306

Jerry and Brenda WEST, husband and wife, Victor and Ruth Lishenko, husband and wife, Plaintiffs–Appellants,

and

LIBERTY MUTUAL FIRE INSURANCE CO., Involuntary Plaintiff–Appellant,

v.

EL PASO PRODUCTS COMPANY, a Texas corporation, Defendant–Respondent.

No. 18610.

Supreme Court of Idaho,
Pocatello, September 1991 Term.

May 15, 1992.

**134**

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., and Warren E. Jones, Boise, for involuntary plaintiff-appellant Liberty Mut. Fire Ins. Co. Warren E. Jones appeared but did not participate in oral argument.

Racine, Olson, Nye, Cooper & Budge, Chtd., Pocatello, for plaintiffs-appellants West and Lishenko. Brent O. Roche argued.

Merrill & Merrill, Chtd., Pocatello, for defendant-respondent El Paso Products, Co. Stephen S. Dunn argued.

BISTLINE, Justice.

This tort liability action was dismissed on the grant of the respondent's summary judgment motion. The district court held that the appellants' cause of action was barred by the I.C. § 5–241 statute of repose. We agree and affirm.

Respondent El Paso Products had a fertilizer plant constructed for its use in 1965. A few months after the plant opened, El Paso modified the operating mechanism for its ammonia granulator by installing a reverse switch. An ammonia granulator is a rotating cylinder approximately twelve feet in diameter and twenty-five feet long. It rotates approximately nine times per minute. Its purpose is to mix slurry with ammonia at a temperature of 210–240 degrees Fahrenheit, in order to form granulated pellets of fertilizer. The reverse switch is used to change the direction of the rotation of the granulator during the cleaning process. In 1972, El Paso sold the plant. The reverse switch was not modified until after the accident here.

On May 27, 1984, Jerry West and Victor Lishenko were inside the granulator cleaning it. The accident from which this suit arises was caused by a co-employee who turned on the reverse switch assuming that no one was inside of the granulator. Due to El Paso's placement of the reverse switch, the co-employee could not see the entrance of the granulator while operating the switch. During the summary judgment proceedings, the appellants' expert testified that El Paso was negligent for 1) installing the reverse switch in that loca-

tion, 2) failing to incorporate a "true lock-out system" to prevent the start up of the granulator when people were inside, and 3) failing to provide an automatic advance warning to persons inside the granulator that the granulator was about to begin operation.

West and Lishenko were trapped inside the granulator for about five minutes. They both suffered severe burns from their contact with the hot ammonia/slurry mix.

The appellants filed suit against El Paso on May 16, 1986, within two years of the accident, but more than twenty years after the reverse switch had been installed by El Paso. The complaint alleged several causes of action. Respondent filed its answer on December 4, 1987, alleging fifteen affirmative defenses, not including the I.C. § 5–241 statute of repose defense which eventually prevailed.

The district court set the case for trial on October 11, 1989. It also set July 7, 1989, as the discovery cut-off date. On May 16, 1989, El Paso filed a motion for summary judgment. The motion did not assert the I.C. § 5–241 defense.

The motion for summary judgment was heard on July 31, 1989. According to the appellants: "[a]fter the discovery cutoff, El Paso filed its Reply Brief on the eve of the summary judgment hearing, asserting for the first time that summary judgment was appropriate on the basis of I.C. § 5–241.... During the summary judgment hearing, appellants urged the District Court not to consider El Paso's argument based upon I.C. § 5–241 since El Paso had not pleaded the statute as an affirmative defense."

The matter was taken under advisement by the district court. Before the court issued its ruling on the motion, El Paso filed a Motion for Leave to File an Amended Answer in order to assert the I.C. § 5–241 defense. Appellants opposed the motion. The court granted both the motion to amend and the motion for summary judgment.

The summary judgment motion was granted solely on the basis that the suit was barred by I.C. § 5–241. Appellants then filed a Motion to Alter or Amend Judgment. They argued that I.C. § 5–241 did not apply and alternatively asked the court to reopen discovery. The court held that the installation of the switch was an improvement to property as a matter of law and that I.C. § 5–241 was applicable to the case. Judgment was entered against the appellants and this appeal timely followed.

The appellants contend that the motion for summary judgment was improperly granted because 1) the district court erred in permitting the defense to file an amended answer alleging the new affirmative defense, 2) that I.C. § 5–241 is not applicable to this case, and alternatively 3) that I.C. § 5–241, if applied in this case, would violate the Idaho and United States Constitutions. We are not persuaded by any of those three grounds taken singly or collectively, and accordingly affirm the dismissal awarded by Judge Winmill.

1.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY PERMITTING THE RESPONDENT TO FILE AN AMENDED ANSWER ALLEGING THE I.C. § 5–241 AFFIRMATIVE DEFENSE.

■ An initial issue we must determine is whether the court erred in allowing El Paso to amend its answer in order to assert the I.C. § 5–241 affirmative defense. The appellants assert that El Paso unduly delayed asserting the defense for over more than three years after the filing of the Complaint. El Paso failed to assert that defense even though it had asserted fifteen other affirmative defenses in its answer filed earlier.

We hold that the court did not abuse its discretion in allowing El Paso to amend its Answer. The court has liberal authority to grant leave to amend and permission to do so "shall be freely given when justice so requires...." I.R.C.P. 15(a). *See Wickstrom v. Northern Idaho College*, 111 Idaho 450, 453, 725 P.2d 155, 158 (1986). For example, in *Kugler v. N.W. Aviation, Inc.*, 108 Idaho 884, 886–67, 702 P.2d 922, 924–45 (Ct.App.1985), our Court of Appeals held the district court did not abuse its discretion in allowing an amendment of an Answer to assert a statute of limitations defense, even though the motion was not made until one week before trial.

Here the trial court found that El Paso's delay in asserting I.C. § 5–241 did not provide a basis to deny the motion for leave to amend. The court observed that it is common for parties to use the pre-trial process to sort out their claims and defenses and to hone their legal arguments. The court noted that West and Lishenko had themselves abandoned a number of their original claims during the course of pre-trial preparation. Additionally, it appears that El Paso asserted the defense as soon as it discovered the facts necessary to support the claim. Under these facts, we cannot conclude that the court abused its discretion in granting leave to amend.

■ The appellants argue alternatively that the court erred in not allowing discovery to be reopened so as to provide an opportunity to seek evidence to refute the untimely pleaded defense. During the motion to alter or amend the order granting summary judgment, the appellants urged the court to reopen discovery so they could "determine exactly how the granulator machine was fabricated and constructed and installed." They noted that "[w]hether the granulator was fully assembled before it was brought on site is something that ... is not developed on the record." The court did not respond to their request.

We conclude that the error, if any, occasioned by the failure of the court to rule on the appellants' request to reopen discovery was harmless because the sought after information was not relevant to the applicability of the I.C. § 5–241 defense. The appellants contend that El Paso negligently modified the reverse switch *after the granulator was installed in the plant.* It is undisputed that the granulator had been in the plant for a few months before the reverse switch was installed. Thus the question of whether the granulator was

partially assembled on site is not germane because the alleged negligent act of modifying the switch clearly occurred after the granulator was installed in the plant and was fully operational.

Finally, the granting of the motion to amend did not prejudice the appellants in light of our ruling in *Blue Stone v. Mathewson*, 103 Idaho 453, 649 P.2d 1209 (1982). There we held that a statute of limitations defense can be raised for the first time in a motion for summary judgment, providing the plaintiff is given an adequate opportunity to respond to the charge. *Blue Stone*, 103 Idaho at 455, 649 P.2d at 1211.

### 2. I.C. § 5–241 IS APPLICABLE TO THIS CASE.

The appellants next contend that I.C. § 5–241 is not applicable to this case either because the installation of the reverse switch was not an "improvement to real property" or that El Paso did not design, plan, supervise or construct the improvement. We disagree.

Idaho Code § 5–241 provides in relevant part:

Actions will be deemed to have accrued and the statute of limitations shall begin to run as to actions against any person by reason of his having performed or furnished the design, planning, supervision or construction of an improvement to real property, as follows:

(a) Tort actions ... shall accrue and the applicable limitation statute shall begin to run six (6) years after the final completion of construction of such an improvement.

■ We first note that the question of whether something is an "improvement to real property" is a question of law for the court. *Hilliard v. Lummus Co.*, 834 F.2d 1352, 1354 (7th Cir.1987).

As to whether the granulator was "real property," it is conceded that the granulator and the control panel were fixtures of the plant and it is beyond cavil that fixtures are real property. The legislature, in another section of the Idaho Code, has defined "real property" as lands and "[t]hat which is affixed to land." I.C. § 55–101. Thus, we hold that a fixture is "real property" for the purposes of I.C. § 5–241.

■ The question of whether the installation of the reverse switch was an "improvement" is readily resolved. An improvement is "the enhancement or augmentation of value . or quality." Webster's Third New International Dictionary (Unabridged), 1138 (Merriam–Webster 1967). Here the reverse switch enhanced the value of the granulator by allowing it to be cleaned with greater ease. The installation of the reverse switch was an improvement to real property for the purposes of I.C. § 5–241.

The three cases relied upon by the appellants in support of their argument that the installation of the reverse switch was not part of "the design, planning, supervision or construction" of an improvement to real property are all inapposite. Although *Ilich v. John E. Smith Sons Co.*, 367 A.2d 1216, 1218 (N.J.1976), does hold that the negligently wired and installed electronic controls in that case were not within scope of a statute similar to I.C. § 5–241, that case is distinguishable because the defective machine at issue was not a fixture, and thus not real property. Here, the granulator is a fixture. *Dighton v. Federal Pac. Elec. Co.*, 399 Mass. 687, 506 N.E.2d 509, 516 (1987), which held that a circuit breaker panel was not an improvement to real property, was decided on the fact that the respondent there was a supplier and manufacturer, not a builder. *Turner v. Marable–Pirkle*, 238 Ga. 517, 233 S.E.2d 773, 775 (1977), is not germane to the question here because there was no improvement to real property in that case where the respondent merely replaced equipment which was already in place.

On the other hand, the cases relied upon by the district court in its ruling are more applicable here. *Stanke v. Wazee Elec. Co.*, 722 P.2d 402, 407 (Colo.1986) (similar statute applicable to indicator light included as part of electrical system operating a grain distribution system); *Mora–San Miguel Electric Coop. v. Hicks & Ragland*

*Consulting & Engineering Co.*, 93 N.M. 175, 598 P.2d 218, 220 (Ct.App.1979) (statute applicable to installation of electrical line); *Brown v. Jersey Cent. Power & Light Co.*, 163 N.J.Super. 179, 394 A.2d 397, 405 (1978) (statute applicable to installation and placement of transfer switch assembly cabinet).

In light of the above authority, we hold that El Paso's installation of the reverse switch was part of the construction of an improvement to real property within the purview of I.C. § 5–241.

The appellants argue in the alternative that if we find I.C. § 5–241 to be applicable, this Court should read that statute consistently with I.C. § 5–219 and allow the time in which to file suit to begin to run at the time the injury occurs. *See, e.g., Blake v. Cruz,* 108 Idaho 253, 698 P.2d 315 (1984). We decline that invitation because the language of I.C. § 5–219 is significantly different from the language of I.C. § 5–241. The latter statute clearly states that "[t]ort actions ... shall accrue and the applicable limitation statute shall begin to run six (6) years after the completion of construction of such an improvement." That language simply cannot be construed to mean the statute begins to run on the date of injury as suggested by the appellants.

### 3. I.C. § 5–241 DOES NOT VIOLATE THE IDAHO OR U.S. CONSTITUTION AS APPLIED IN THIS CASE.

The appellants attack I.C. § 5–241 on several constitutional grounds. They argue the statute violates: (1) the open courts clause of the Idaho Constitution (art. 1, § 18), (2) the prohibition against special laws (art. 4, § 19), (3) the state equal protection clause (art. 1, § 2), and (4) and the due process clause (art. 1, § 13).

The Court's decision in *Twin Falls Clinic & Hosp. Bldg. v. Hamill,* 103 Idaho 19, 24–26, 644 P.2d 341, 346–47 (1982), is dispositive of the first three arguments. In that case, we upheld I.C. § 5–241 against the same open courts, special laws and equal protection challenges raised here. The appellants assert that the portion of the opinion dealing with the constitutional

challenges was dicta because it was not needed to resolve the issues presented to us. That, however, is not the case. While it is true that we remanded part of the case to determine whether the respondent was estopped from asserting I.C. § 5–241, there were other allegations, not subject to any claim of estoppel, where the constitutionality of the statute was clearly presented.

The appellants also assert that the constitutional holdings in *Twin Falls Clinic* need not be given precedential effect because we could have held the action was barred by the more general I.C. § 5–219 or I.C. § 5–224 statutes of limitation. This argument ignores our rule that when confronted with general and specific statutes the specific statute controls. *Farmer's Nat. Bank v. Wickham Pipeline,* 114 Idaho 565, 569, 759 P.2d 71, 75 (1988). In sum, we continue to adhere to the views expressed in *Twin Falls.*

■ Finally, we find that the appellants have failed to preserve their due process argument. In general, this Court will not consider constitutional issues not raised in the court below. *State v. Wheaton,* 121 Idaho 404, 407, 825 P.2d 501, 504 (1992).

Because the appellants did not file their suit until more than twenty years had elapsed since El Paso had installed the reverse switch, we hold the suit is barred by I.C. § 5–241 and affirm the order granting summary judgment in favor of El Paso. Costs on appeal to respondents. ₒ

BAKES, C.J., and JOHNSON, and McDEVITT, JJ. concur.

BOYLE, J., fully concurred prior to his resignation on March 31, 1992.