## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 39198-2011

| | | |
|---|---|---|
| MICHAEL STAPLETON, | ) | |
| | ) | Rexburg, November 2012 Term |
| Plaintiff-Appellant, | ) | |
| | ) | 2012 Opinion No. 145 |
| v. | ) | |
| | ) | Filed: December 20, 2012 |
| JACK CUSHMAN DRILLING AND PUMP | ) | |
| COMPANY INCORPORATED, and BOB | ) | Stephen W. Kenyon, Clerk |
| CUSHMAN, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Bingham County. The Hon. Darren B. Simpson, District Judge.

The judgment of the district court is affirmed.

Joshua L. Smith; Pendlebury Law Office, P.A.; Idaho Falls; argued for appellant.

Dina L. Sallak, Carey Perkins LLP, Idaho Falls, argued for respondents.

---

EISMANN, Justice.

This is an action out of Bingham County to recover damages from a well driller who drilled a well that later caved in. The district court granted the well driller's motion for summary judgment on the ground that the alleged claims of negligence and breach of contract were barred by the applicable statutes of limitations, and the court dismissed the action. We hold that the breach of contract claim was barred by the statute of limitations and that the negligence claim was barred by the economic loss rule, and so affirm the judgment of dismissal.

## I.

### Factual Background.

In August 2006, Michael Stapleton orally contracted with Jack Cushman Drilling and Pump Company, Incorporated, ("Cushman Drilling") to drill a well on certain residential real

property located in Mackay, Idaho. Mr. Stapleton spoke with Bob Cushman, who was the vice president and an employee of the company, and it was Mr. Cushman who actually drilled the well. There were no structures on the land at that time. Cushman Drilling completed the well in August 2006 and capped it.

The following year, Mr. Stapleton constructed a house on the property and connected the well to the house. He lived in Pennsylvania and only stayed at the house several times a year, but he had the property landscaped with trees, bushes, grass, and shrubs. In January 2007, Mr. Stapleton noticed that there was green sediment in the water and that the water pressure was low. He contacted Mr. Cushman, who, after looking at the well, stated that it was an electrical problem. Mr. Stapleton then contacted an electrician, who stated that there were no electrical problems with the well.

In the fall of 2010, the well stopped producing water altogether. After Mr. Cushman refused to look at it, Mr. Stapleton contacted another well driller, who inspected the well and determined that the walls of the well had caved in and that it was beyond repair. Mr. Stapleton had that well driller drill a second well on the property, which necessitated tearing out landscaping that had been planted.

On April 6, 2011, Mr. Stapleton filed this action against Cushman Drilling and Mr. Cushman, alleging claims of negligence and breach of contract. The Defendants moved for summary judgment on the grounds that the claims were barred by the applicable statutes of limitations, by the economic loss rule, and by the failure to comply with the Notice and Opportunity to Repair Act.[1] They also contended that Mr. Cushman could not be personally liable because he had been acting as an agent of the corporation. The district court held that Mr. Stapleton's causes of action for negligence and breach of contract accrued by at least January 2007 when he noticed the green sediment in the water and low water pressure; that the claim for negligence was barred by the four-year statute of limitations set forth in Idaho Code section 5-224; and that the claim for breach of contract was barred by the four-year statute of limitations set forth in Idaho Code section 5-217. Because it held that the claims were barred by the applicable statutes of limitations, the district court did not address the economic loss rule. The court ruled that the action should be dismissed as to Mr. Cushman because Mr. Stapleton had not

---

[1] During oral argument on the Defendants' motion for summary judgment, they conceded that the Notice and Opportunity to Repair Act did not apply to this case.

2

presented any argument or authority to the contrary. The court entered a judgment dismissing the complaint, and Mr. Stapleton timely appealed.

## II.
## Did the District Court Err in Holding that the Claim for Breach of Contract Was Barred by Idaho Code Section 5-217?

The Defendants alleged as an affirmative defense in their answer that "Plaintiff's Complaint is barred under the statute of limitations." One of the statute of limitations cited was Idaho Code section 5-217, which is the four-year statute of limitations for an action upon an oral contract. The issue was when the statute of limitations began to run.

Idaho Code section 5-421 specifies when a cause of action accrues and the statute of limitations begins to run "as to actions against any person by reason of his having performed or furnished the design, planning, supervision or construction of an improvement to real property." I.C. § 5-241. With respect to such actions for breach of contract, the cause of action "shall accrue and the applicable limitation statute shall begin to run at the time of final completion of construction of such an improvement." I.C. § 5-241(b).

"[T]he question of whether something is an 'improvement to real property' is a question of law for the court." *West v. El Paso Products Co.*, 122 Idaho 133, 136, 832 P.2d 306, 309 (1992). An improvement is something that enhances or augments the value or quality of the real property. *Id.* A well is an improvement to real property. That the well at issue in this case was allegedly not completed in a workmanlike manner is irrelevant to the application of the statute. In contract actions, the statute provides that the statute of limitations begins to run when the improvement is completed. It does not provide that the cause of action accrues upon the discovery of a defect in workmanship, or upon a breach of an express provision in the contract, or upon the occurrence of damage as a result of the breach. If the quality of workmanship determined whether something was an improvement, then the statute of limitations would commence running when the improvement was completed and then retroactively not commence running upon the discovery that the improvement was ultimately of little or no value due to defects in material or workmanship. That would be inconsistent with the obvious purpose of the statute. Mr. Stapleton does not assert that the well did not constitute the construction of an improvement to his real property.

3

In their opening brief in support of their motion for summary judgment, the Defendants did not cite Idaho Code section 5-241. They argued that the statutes of limitations for the contract and negligence claims began to run in January 2007 when Mr. Stapleton had Mr. Cushman and then an electrician look at the well to determine the cause of the sediment in the water and the low water pressure. In his brief opposing summary judgment, Mr. Stapleton argued that the applicable statutes of limitations did not begin to run until some damage occurred, which was on November 11, 2010, when the well caved in. In their reply memorandum in support of their motion for summary judgment, the Defendants raised the issue that pursuant to Idaho Code section 5-241, the statute of limitations for breach of contract began to run when the well was completed in August 2006.

In its decision granting summary judgment, the district court did not mention section 5-241, but it did state that the statute of limitations on the contract claim could have commenced running in August 2006 when the well was completed (which may have been based upon section 5-241) or in January 2007 when Mr. Stapleton noticed low water pressure and sediment in the water. It concluded that in either case, the contract claim was barred by the statute of limitations. The court wrote, "Thus, even upon the most liberal interpretation of the accrual of a cause of action renders Stapleton's breach of contract claim barred by the four-year deadline imposed."

In his opening brief on appeal, Mr. Stapleton did not address when the statute of limitations on the contract claim would begin to run under Idaho Code section 5-241. He argued that "the oral contract was for the provision of water to Mr. Stapleton's residence" and "[t]he contract could not have been breached until the home was completed." Alternatively, he argued: "Cushman Drilling did not breach its agreement with Mr. Stapleton until the well completely failed in October 2010. Prior to complete failure of the well, Cushman Drilling did provide water to the residence, though the water had green sediment and the water pressure was low." In response, the Defendants countered that pursuant to section 5-241, the statute of limitations began to run in August 2006 when the well was completed. In his reply brief, Mr. Stapleton argued for the first time that the well was not finally completed in August 2006. He asserted, "In this case, there are genuine issues of material fact as to when the construction of the well was *finally* completed."

This contention is inconsistent with Mr. Stapleton's prior assertions of what the evidence showed. In his brief opposing summary judgment, he stated, "The residence on Mr. Stapleton's

property was completed *after Defendants completed the water well*." (Emphasis added.) In his opening brief on appeal, Mr. Stapleton stated, "The well was completed in August 2006." Even in his reply brief on appeal, Mr. Stapleton asserts, "Mr. Stapleton's affidavit states, 'About a year later [after the well's construction], I finally built a house on my property and water from the well was connected to my house in Mackay." (Bracketed material his.)

Mr. Stapleton's argument is that the statute of limitations would not begin to run until the *contract* was finally completed, not when the improvement was finally completed, and the evidence shows that the contract required Cushman Drilling to connect the well to the house, once the house was eventually built.

In support of this assertion, he points to the statement in Mr. Cushman's affidavit that "in or about August 2006 Jack Cushman Drilling and Plaintiff orally contracted for the drilling of a well for a residential property in Mackay, Idaho." Contracting to drill a well on a vacant piece of residential property could hardly be construed as also contracting to connect the well to whatever structure was later erected on the property.

Mr. Stapleton also contends that statements in his affidavit support the contention that Cushman Drilling contracted to connect the well to the house once it was eventually built. He relies upon his following statements:

> 5. In the summer of 2006, I called Bob Cushman and told him I needed water for my property and asked him to drill a well and to provide the water for my property in Mackay.
> 6. I am not a geologist or a well driller. I needed water for my property, and I asked Bob Cushman to do everything necessary to have water on the property.
> 7. When Bob Cushman constructed a well, there was nothing else on the property but an empty land. I did intend, however, to build a house on the property.
> 8. About a year later, I finally built a house on my property and water from the well was connected to my house in Mackay.

Asking Mr. Cushman to drill a well to provide water "for my property" and to do everything necessary to have water "on the property," which was a vacant residential lot, could not reasonably be construed as an agreement that Cushman Drilling would connect the well to whatever structure may later be built on the property. Likewise, there is absolutely nothing in the record indicating that the Defendants were involved in connecting the well to the house once it was built.

5

However, even assuming that Cushman Drilling agreed to connect the well to the house once the house was built, the construction project at issue in this case is the construction of the well. As Mr. Stapleton stated in his brief opposing summary judgment, "[T]his claim deals with construction of a water well, not with construction of a residence." The record is clear that construction of the well was finally completed in August, 2006. On that date, the four-year statute of limitations began to run. Because this action was not commenced until April 6, 2011, Mr. Stapleton's claim for the breach of the oral contract is barred by the statute of limitations.

When the trial court reaches the correct result by an erroneous theory, we will affirm the result on the correct theory. *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003). Therefore, we affirm the district court's conclusion that the breach of contract claim was barred by the statute of limitations.

### III.
### Did the District Court Err in Holding that the Claim of Negligence Was Barred by the Statute of Limitations?

The district court held that the four-year statute of limitations set forth in Idaho Code section 5-224 was applicable to the claim for negligence, that the negligence cause of action accrued in January 2007, and that the negligence claim was therefore barred by the statute of limitations. As stated above, the accrual of the cause of action in this case is governed by Idaho Code section 5-241. That section provides with respect to tort actions that the cause of action "if not previously accrued, shall accrue and the applicable limitation statute shall begin to run six (6) years after the final completion of construction of such an improvement." I.C. § 5-241(a).

Under the statute, there are two times when a tort action could accrue. Prior to six years after the final completion of construction of the improvement, the tort action will accrue when there is some damage caused by the tortious conduct. *Stephens v. Stearns*, 106 Idaho 249, 254, 678 P.2d 41, 46 (1984). If the tort action does not accrue earlier, it will then accrue six years after the final completion of construction of the improvement even if no damage has yet been caused by the tortious conduct. *West v. El Paso Products Co.*, 122 Idaho 133, 137, 832 P.2d 306, 310 (1992). Section 5-241 does not specify the length of the applicable statute of limitations. *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 24, 644 P.2d 341, 346 (1982). "Because there is no statute of limitations specifically governing negligence actions that do not involve personal injury or malpractice, we apply the four-year statute of limitations

6

found in I.C. § 5-224." *Jones v. Runft, Leroy, Coffin & Matthews, Chartered*, 125 Idaho 607, 613, 873 P.2d 861, 867 (1994).

In this case, the district court held that Mr. Stapleton's negligence cause of action accrued in January 2007 when he noticed green sediment in the water and low water pressure. According to the district court, this was "clear signs of negligence." It held: "Stapleton had grounds for a lawsuit against Cushman at the beginning of January, 2007. Thus, his cause of action against Cushman accrued at that time."

The district court did not cite anything in the record as supporting its conclusion that the green sediment and low pressure were "clear signs of negligence." There is no sworn testimony from anyone stating that those were signs that the well had been negligently constructed, much less that they constituted damage. However, unsworn statements can be considered if there is no objection. *Heinze v. Bauer*, 145 Idaho 232, 236, 178 P.3d 597, 601 (2008). Mr. Stapleton attached to his complaint a copy of a written report sent to his counsel by an expert who had been asked to render an opinion regarding the construction of the well. Both parties referred to that report in their briefing on summary judgment, and neither party objected to its consideration. The Defendants cited the report as support for their assertion that "Plaintiff made a statement to his retained expert that date [sic] the discovery of the alleged problems to no later than January 2007." Actually, the report stated that Mr. Stapleton's counsel, not Mr. Stapleton, had reported that "the owner contacted Cushman Drilling in January of 2007 and many other times to report that the #1 Well [drilled by the Defendants] was producing green water and his water system was operating at low pressure." Although the expert stated that such well water was "unacceptable" and that Cushman Drilling did not take any corrective action, the expert did not state that such condition was the result of the Defendants' negligence.

Rather, the expert stated:

> The major problem with water yield from the well was caused by 250 ft of open hole with no well liner or well screen to keep the geologic layers from caving into the open hole. This is exactly what happened as documented by the fill measured by Independent Well Drilling (Figure 3). When Independent measured the depth of the well, the bottom was found at 180 ft. In soft sediments and loose rock it is necessary to install pipe with slots in it or well screen to hold the well bore open.

The expert stated that the problem with water yield was the well caving in due to the lack of a well liner or well screen, which is "exactly what happened as documented by the fill measured

by Independent Well Drilling." That was the company which Mr. Stapleton hired to examine the well when it ceased producing water in the fall of 2010. It is also the company that drilled the new well. The expert did not attribute the sediment and decreased water pressure noticed in January 2007 to the well caving in. The expert also stated that the well "was constructed in a manner that allowed inter-connecting of three water bearing aquifers in a single well" and it "was probably not properly developed to remove debris in the casing perforations." However, he did not attribute either of those as a cause of the sediment and low pressure that occurred in January 2007.

For a cause of action to have accrued, the damage must have resulted from an act of negligence. *Conway v. Sonntag*, 141 Idaho 144, 147, 106 P.3d 470, 473 (2005). There is no evidence in the record that an act of negligence caused damage until the well caved in, which occurred in the fall of 2010. Therefore, the four year statute of limitations for negligence did not run prior to the filing of this action on April 6, 2011. The district court erred in holding that the negligence action was barred by the statute of limitations. However, as stated above, when the trial court reaches the correct result by an erroneous theory, we can affirm the result on the correct theory. Both parties have briefed the economic loss rule in the district court and on appeal, so we will consider that issue.

## IV.
## Is Mr. Stapleton's Negligence Claim Barred by the Economic Loss Rule?

The Defendants argue on appeal that Mr. Stapleton's negligence claim was barred by the economic loss rule. They made that argument in the district court, but it did not address that issue because it incorrectly held that the negligence claim was barred by the statute of limitations. With respect to the application of the economic loss rule, Mr. Stapleton asserts on appeal, "That is not the decision the trial court reached, and that is not the issue Stapleton appealed." A respondent on appeal is not necessarily limited to the issues decided by the trial court or the issues raised by the appellant. The respondent can seek to sustain a judgment for reasons that were presented to the trial court even though they were not addressed or relied upon by the trial court in its decision. *Walker v. Shoshone County*, 112 Idaho 991, 993, 739 P.2d 290, 292 (1987); I.A.R. 11(g), 15(a), & 35(b)(4). Therefore, we will address the application of the economic loss rule.

8

"Unless an exception applies, the economic loss rule prohibits recovery of purely economic losses in a negligence action because there is no duty to prevent economic loss to another." *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 300, 108 P.3d 996, 1000 (2005). Damages from harm to person or property are not *purely* economic losses. *Brian and Christie, Inc. v. Leishman Elec., Inc.*, 150 Idaho 22, 28, 244 P.3d 166, 172 (2010). "[E]conomic loss is recoverable in tort as a loss parasitic to an injury to person or property." *Duffin v. Idaho Crop Imp. Ass'n*, 126 Idaho 1002, 1007, 895 P.2d 1195, 1200 (1995). "Property damage encompasses damage to property other than that which is the subject of the transaction." *Salmon Rivers Sportsman Camps v. Cessna Aircraft Co.*, 97 Idaho 348, 351, 544 P.2d 306, 309 (1975). "It is the subject of the transaction that determines whether a loss is property damage or economic loss . . . ." *Id.* at 301, 108 P.3d at 1001. This Court has defined the "subject of the transaction" by the subject matter of the contract. *Aardema v. U.S. Dairy Systems, Inc.*, 147 Idaho 785, 791, 215 P.3d 505, 511 (2009). The subject of the transaction in this case was the well that was constructed by the Defendants, which included drilling the well and installing casing, the pump, and related items necessary for the well to produce water. Therefore, Stapleton cannot recover in negligence for damage to the well when it caved in because that recovery is barred by the economic loss rule.

With respect to the application of the economic loss rule, Mr. Stapleton argues: "[T]here are genuine, material issues of fact as to the subject of the transaction of the parties' oral contract. . . . The subject of the transaction was the well itself—*as well as* the provision of water to the home and landscaping." Mr. Stapleton does not attempt to explain why the economic loss rule would not apply if the well was not the sole subject of the transaction. He simply makes the quoted statement. Because he admits that the subject of the transaction was "the well itself," it is not clear why he would think that the economic loss rule did not apply to a claim that the well was negligently constructed. Mr. Stapleton also argues that his property was injured when the well caved in; that "there are genuine, material issues of fact as to the nature and extent of the damages resulting from that injury"; and that "the economic-loss rule may apply to some [sic] Stapleton's damages, but there are genuine issues of material fact that preclude summary judgment on the issue." In that respect, he asserts that he was denied the opportunity to conduct discovery in this action because he filed the lawsuit in April 2011, the Defendants moved for summary judgment in May 2011, and the district court granted summary judgment in August

2011. He asks this Court to "reverse the trial court's summary judgment decision and remand this case so that he may conduct discovery." He does not explain why he would need to conduct discovery to determine the property damage he allegedly suffered from the well caving in. Nevertheless, he did not ask the district court for a continuance under Rule 56(f) of the Idaho Rules of Civil Procedure, and it is therefore too late to assert that he needed more time to respond to the Defendant's motion for summary judgment. *Golay v. Loomis*, 118 Idaho 387, 391, 797 P.2d 95, 99 (1990).

The property damage that Mr. Stapleton contends he suffered is set forth in his affidavit as follows:

> 15. Independent Drilling had to drill a second well on my property. For that, I had to tear apart all the landscaping I had already there. After the new well was constructed, I had to have a new landscaping done.
> 16. I sustained economic damages above and beyond just drilling a new well. I had to buy water for consumption for the period when the old well became unusable and the new well was installed. I had to pay for the old landscaping, have it destroyed, and pay for the new landscaping. I had to stay longer time in Idaho to make sure everything was taken care of, and I had to make extra trips just to make sure there was water in the house.

In his affidavit, Mr. Stapleton does not identify any property that was damaged by the well caving in, other than the well itself. "Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Salmon Rivers Sportsman Camps, Inc., v. Cessna Aircraft Co.*, 97 Idaho 348, 351, 544 P.2d 306, 309 (1975). Thus, the cost to drill a new well in order to replace the one that caved in; the need to destroy his existing landscaping in order to drill the new well; the cost to purchase water due to the loss of use of the well; and the expenses incurred to travel to and stay at his property while the new well was being constructed were not damages resulting from property damage but were economic losses under the economic loss rule.

Finally, he argues, "Additionally, the trial court never determined whether a special relationship or unique circumstances applied in this case." We have recognized a "special relationship exception" and a "unique circumstances exception" to the economic loss rule. *Blahd*, 141 Idaho at 301-02, 108 P.3d at 1001-02. Although he states that "the trial court never determined whether a special relationship or unique circumstances applied in this case," Mr.

Stapleton does not present any argument or authority on appeal regarding those exceptions. "When issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered. . . . A party waives an issue cited on appeal if either authority or argument is lacking, not just if both are lacking." *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Because Mr. Stapleton has not presented either argument or authority regarding these exceptions, he has waived any issue regarding their application to this case.

## V.
## Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Mr. Stapleton seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-120(3) on the ground that this is an action to recover on an open account. Attorney fees are awarded under that statute only to the prevailing party. Not only is Mr. Stapleton not the prevailing party, but this is not an action on an open account.[2]

The Defendants also seek an award of attorney fees on appeal pursuant to section 12-120(3) on the ground that this is an action to recover in a commercial transaction. The statute defines a commercial transaction as "all transactions except transactions for personal or household purposes." The Defendants do not present any argument as to why this was a commercial transaction as defined by the statute. They simply cite the district court's order awarding attorney fees on that ground and point out that Mr. Stapleton did not appeal that award. The order states that the court's reasons for concluding this was a commercial transaction were stated on the record, but a transcript of those statements is not in the record on appeal.

An action is not one to recover in a commercial transaction if the transaction was for personal or household purposes with respect to one of the parties. *Mickelsen v. Broadway Ford, Inc.*, 153 Idaho 149, ___, 280 P.3d 176, 183 (2012) (action to recover regarding truck lease was not a commercial transaction where, although lessor was in the business of leasing vehicles, the lessee leased the truck for personal use). From Mr. Stapleton's perspective, there is nothing in the record showing that this was a commercial transaction. He did not have the well drilled for a commercial purpose. It was drilled on a residential lot to provide water for a house ultimately to be built, and there is no evidence that he was going to build the house for sale. The evidence in

---

[2] In response to a question during oral argument, Mr. Stapleton's attorney stated that he did not know what an open account was.

the record is that he intended to live in the house, and did so. Thus, he entered into the transaction for personal or household purposes. *PHH Mortgage Services Corp. v. Perreira*, 146 Idaho 631, 641, 200 P.3d 1180, 1190 (2009) (action to eject defendants from their residence after foreclosure sale and counterclaim to contest the sale was not an action to recover in a commercial transaction); *Bajrektarevic v. Lighthouse Home Loans, Inc*., 143 Idaho 890, 893, 155 P.3d 691, 694 (2007) (action involving the refinancing of plaintiff's home was not a commercial transaction). Therefore, the Defendants are not entitled to an award of attorney fees on appeal.

## VI.
### Conclusion.

We affirm the judgment of the district court dismissing the complaint with prejudice. We award the respondents costs on appeal, but not attorney fees.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**